UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CATSKILL MOUNTAINS CHAPTER OF TROUT
UNLIMITED, INC., THEODORE GORDON
FLYFISHERS, INC., CATSKILL-DELAWARE
NATURAL WATER ALLIANCE, INC.,
FEDERATED SPORTSMEN'S CLUBS OF ULSTER
COUNTY, INC., RIVERKEEPER, INC.,
WATERKEEPER ALLIANCE, INC., TROUT
UNLIMITED, INC., NATIONAL WILDLIFE
FEDERATION, ENVIRONMENT AMERICA,
ENVIRONMENT NEW HAMPSHIRE,
ENVIRONMENT RHODE ISLAND, and
ENVIRONMENT FLORIDA,

                              Plaintiffs,

        v.

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY and LISA JACKSON, in
her official capacity as ADMINISTRATOR OF THE
UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY,

                              Defendants.

Consolidated Cases:

Case Nos.  08-CV-5606 (KMK)
               08-CV-8430 (KMK)

OPINION AND ORDER

STATE OF NEW YORK, CONNECTICUT,
DELAWARE, ILLINOIS, MAINE, MICHIGAN,
MINNESOTA, MISSOURI, WASHINGTON, and the
GOVERNMENT OF THE PROVINCE OF
MANITOBA, CANADA,

                              Plaintiffs,

        v.

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY and LISA JACKSON, in
her official capacity as ADMINISTRATOR OF THE
UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY,

                              Defendants.

Appearances:

Daniel E. Estrin, Esq.
Karl S. Coplan, Esq.
Sara Kemme[1]
Pace Environmental Litigation Clinic
White Plains, New York
*Counsel for Plaintiffs Catskill Mountains Chapter of Trout Unlimited, Inc., Theodore Gordon Flyfishers, Inc., Catskill-Delaware Natural Water Alliance, Inc., Federated Sportsmen's Clubs of Ulster County, Inc., Riverkeeper, Inc., Waterkeeper Alliance, Inc., and Trout Unlimited, Inc.*

James G. Murphy, Esq.
National Wildlife Federation
Montpelier, Vermont
*Counsel for Plaintiff National Wildlife Federation*

Joseph J. Mann, Esq.
National Environmental Law Center
San Francisco, California
*Counsel for Plaintiffs Environment America, Environment New Hampshire, Environment Rhode Island, and Environment Florida*

David H. Wrinn, Esq.
Connecticut Office of the Attorney General
Hartford, Connecticut
*Counsel for Plaintiff State of Connecticut*

David L. Ormond, Jr., Esq.
Delaware Department of Justice
Wilmington, Delaware
*Counsel for Plaintiff State of Delaware*

Eldon V.C. Greenberg, Esq.
Richard Wegman, Esq.
Garvey Schubert Barer
Washington, D.C.
*Counsel for Plaintiff Government of the Province of Manitoba, Canada*

---

[1] Ms. Kemme, a law student at Pace University School of Law, was granted permission to appear on behalf of Environmental Plaintiffs pursuant to this Court's Student Practice Rule under the supervision of Mr. Estrin and Mr. Coplan.

Gerald T. Karr, Esq.
Matthew J. Dunn, Esq.
Susan Hedman, Esq.
Illinois Office of the Attorney General
Chicago, Illinois
*Counsel for Plaintiff State of Illinois*

Thomas A. Harnett, Esq.
Maine Office of the Attorney General
Augusta, Maine
*Counsel for Plaintiff State of Maine*

S. Peter Manning, Esq.
Michigan Department of the Attorney General
Lansing, Michigan
*Counsel for Plaintiff State of Michigan*

Carla Heyl, Esq.
Minnesota Office of the Attorney General
St. Paul, Minnesota
*Counsel for Plaintiff State of Minnesota*

Todd Iveson, Esq.
William J. Bryan, Esq.
Joseph P. Bindbeutel, Esq.
Missouri Office of the Attorney General
Jefferson City, Missouri
*Counsel for Plaintiff State of Missouri*

Philip M. Bein, Esq.
Kevin P. Donovan, Esq.
New York Office of the Attorney General
Albany, New York
*Counsel for Plaintiff State of New York*

Ronald L. Lavigne, Esq.
Ecology Division
Washington Office of the Attorney General
Olympia, Washington
*Counsel for Plaintiff State of Washington*

Daniel P. Filor, Esq.
United States Attorney's Office
Southern District of New York
New York, New York
*Counsel for EPA Defendants*

Bridget T. Eichinger, Esq.
New York City Law Department
Office of the Corporation Counsel
New York, New York
*Counsel for Defendant City of New York*

KENNETH M. KARAS, District Judge:

      Plaintiffs Catskill Mountains Chapter of Trout Unlimited, Inc., Theodore Gordon

Flyfishers, Inc., Catskill-Delaware Natural Water Alliance, Inc., Federated Sportsmen's Clubs of

Ulster County, Inc., Riverkeeper, Inc., Waterkeeper Alliance, Inc., Trout Unlimited, Inc.,

National Wildlife Federation, Environment America, Environment New Hampshire,

Environment Rhode Island, and Environment Florida (collectively, "Environmental Plaintiffs")

and Plaintiffs States of New York, Connecticut, Delaware, Illinois, Maine, Michigan, Minnesota,

Missouri, Washington, as well as the Government of the Province of Manitoba, Canada

(collectively, "State Plaintiffs"), seek judicial review of the National Pollutant Discharge

Elimination System Water Transfers Rule (hereinafter "Water Transfers Rule"), 40 C.F.R.

§ 122.3(i), a regulation issued by Defendant United States Environmental Protection Agency

("EPA").  Defendant City of New York ("Defendant City") was granted permission without

opposition to intervene as a Defendant in these actions.  In the instant motion, Defendants EPA

and Lisa Jackson, Administrator of EPA (collectively, "EPA Defendants") and Defendant City

(collectively "Defendants") ask the Court to stay these consolidated proceedings pending the

Eleventh Circuit's resolution of several consolidated petitions pending before it, which also

4

challenge the Water Transfers Rule.[2]  Alternatively, Defendants ask the Court to dismiss these

actions on the ground that the Court lacks subject matter jurisdiction.  For the reasons set forth

below, the Court grants Defendants' motion to stay these proceedings.

I. Background

A. Relevant Legal and Regulatory Background

1. The Clean Water Act

Congress enacted the Clean Water Act ("CWA") "to restore and maintain the

chemical, physical, and biological integrity of the Nation's waters."  33 U.S.C. § 1251(a).  To

achieve this objective, the CWA generally prohibits the "discharge of any pollutant" except as

authorized by a provision of the CWA.  *See* 33 U.S.C. § 1311(a).  The provision relevant to this

case, 33 U.S.C. § 1342, establishes a permitting program called the National Pollutant Discharge

Elimination System ("NPDES"), which allows EPA or state administrators to issue a permit for

the discharge of a pollutant into national waters at or below the effluent limitations specified in

the permit.  Thus, it is through the NPDES permitting program that the CWA limits the amount

and concentrations of pollutants that may be discharged into waters.  *See Arkansas v. Oklahoma*,

503 U.S. 91, 101 (1992) (noting that the NPDES permitting program is "[t]he primary means for

enforcing the[] limitations and standards" contained in the CWA).

The CWA defines the "discharge of a pollutant" and "discharge of pollutants" as "any

addition of any pollutant to navigable waters from any point source."  33 U.S.C. § 1362(12).  A

"pollutant" is broadly defined in the CWA to encompass a large number of substances, including

---

[2] Lisa Jackson, the Administrator of EPA, took office as of January 26, 2009.  Pursuant to
Fed. R. Civ. P. 25(d)(1), she is automatically substituted as Defendant for her predecessor in
office, Stephen L. Johnson, who had been named as defendant in Plaintiffs' Complaints.

5

industrial, municipal, and agricultural wastes.  *See id*. § 1362(6).  "Navigable waters" are defined

by the CWA as "the waters of the United States, including the territorial seas."  *Id*. § 1362(7).  A

"point source" is defined by the CWA as

> any discernible, confined and discrete conveyance, including but
> not limited to any pipe, ditch, channel, tunnel, conduit, well,
> discrete fissure, container, rolling stock, concentrated animal
> feeding operation, or vessel or other floating craft, from which
> pollutants are or may be discharged.  This term does not include
> agricultural stormwater discharges and return flows from irrigated
> agriculture.

*Id*. § 1362(14).  "The statute does not define 'addition.'"  *Catskill Mountains Chapter of Trout

Unltd., Inc. v. City of New York*, 273 F.3d 481, 489 (2d Cir. 2001) ("*Catskill I*").

### 2. EPA's Treatment of Water Transfers Under the CWA

The consolidated actions before this Court concern the appropriate treatment under the

CWA of "water transfers," defined by EPA as "activities involving a transfer of the waters of the

United States, unaltered and without any intervening industrial, municipal, or commercial use,

through a point source from one location to another location."  (EPA Defs.' Mem. in Supp. Mot.

to Stay or Dismiss ("EPA Defs.' Mem.") 4.)  This definition of water transfers reflects what is

sometimes referred to as the "unitary water theory of navigable waters," which the Supreme

Court has described as the argument that "all the water bodies that fall within the [CWA's]

definition of 'navigable waters' . . . should be viewed unitarily for purposes of NPDES

permitting requirements," and therefore "permits are *not* required when water from one navigable

water body is discharged, unaltered, into another navigable water body."  *S. Fla. Water Mgmt.

Dist. v. Miccosukee Tribe of Indians*, 541 U.S. 95, 105-06 (2004) (hereinafter "*Miccosukee*").

6

Historically, in administering the CWA, EPA generally did not require NPDES permits for water transfers. *See* NPDES Water Transfers Proposed Rule ("Proposed Rule" or "Proposed Water Transfers Rule"), 71 Fed. Reg. 32,887, 32,891 (proposed June 7, 2006) (codified at 40 C.F.R. § 122.3(i)) (explaining that EPA historically concluded that "Congress did not generally intend to subject water transfers to the NPDES program"); *see also Miccosukee*, 541 U.S. at 107 (noting EPA's argument that it has been the "longstanding EPA view that the process of transporting, impounding, and releasing navigable waters cannot constitute an addition of pollutants to the waters of the United States" (internal quotation marks omitted)). *But see id*. (noting that "an *amicus* brief filed by several former EPA officials argues that the agency once reached the opposite conclusion"). Prior to 2005, EPA had not formally articulated its policy regarding water transfers in any administrative document. *See id*. at 108 (noting that EPA had produced no administrative document espousing view that water transfers were not subject to the NPDES permitting requirements, that it was possible that EPA had at least on one occasion espoused a contrary position, and that such a position could conflict with NPDES permitting requirements); *see also Catskill I*, 273 F.3d at 490 (noting that while EPA had taken the position in several policy statements that dam releases were not covered under the NPDES permitting requirements, as well as in two lawsuits before the District of Columbia and Sixth Circuits, it had never formalized its position through a notice-and-comment rulemaking or formal adjudication under the Administrative Procedure Act ("APA"), 5 U.S.C. § § 553, 554).

<u>a. The Second Circuit's First Decision in the *Catskill* Case</u>

In March 2000, many of the same plaintiffs who are Environmental Plaintiffs in the instant cases filed a complaint against the City of New York, the New York City Department of Environmental Protection, and the Commissioner of the New York City Department of Environmental Protection in the District Court for the Northern District of New York under the citizen-suit provision of the CWA, 33 U.S.C. § 1365(a)(1), arguing that water transfers are covered by the NPDES permitting requirements. *See Catskill I*, 273 F.3d at 484-85. The lawsuit alleged that the City of New York had violated the CWA's prohibition against "discharg[ing] . . . any pollutant," 33 U.S.C. § 1311(a), by conducting certain water transfers without seeking an NPDES permit. *See Catskill I*, 273 F.3d at 484-85.[3]

The district court granted the defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), concluding that "as a matter of law," the City of New York's water transfers "did not effect an 'addition' of a pollutant . . . as required to trigger the CWA's permit requirement." *Id*. at 485. On appeal in 2001, the Second Circuit reversed the district court's dismissal, *id*. at 494, holding that under the plain meaning of the CWA, "the transfer of water containing pollutants from one body of water to another, distinct body of water is plainly an

---

[3] The particular issue in *Catskill I* was the City of New York's operation of the Schoharie Dam and Reservoir in the Catskill Mountains, which provides drinking water to New York City by diverting water from the Schoharie Reservoir through the Shandaken Tunnel for several miles, releasing that water into Esopus Creek. *See Catskill I*, 273 F.3d at 484. The water from Esopus Creek then empties into the Ashokan Reservoir. *See id*. "Under natural conditions, water from the Schoharie Reservoir would never reach Esopus Creek." *Id*. The *Catskill I* plaintiffs alleged that sending water through the Shandaken Tunnel "discharges pollutants in the form of suspended solids, turbidity, and heat into Esopus Creek," thereby causing Esopus Creek "to violate state water quality standards for turbidity and temperature." *Id*. at 485 (internal quotation marks omitted).

addition and thus a 'discharge' that demands an NPDES permit," *id*. at 491.  In interpreting the

CWA, the Second Circuit noted that it did not grant *Chevron* deference to EPA's position that

water transfers were not covered by the NPDES permitting requirements because EPA had never

formalized its position through its rulemaking authority or through another formal proceeding.[4]

*See Catskill I*, 273 F.3d at 489-90 ("Interpretations such as those in opinion letters – like

interpretations contained in policy statements, agency manuals, and enforcement guidelines, all

of which lack the force of law – do not warrant *Chevron*-style deference.")).  The Second Circuit

then remanded for proceedings consistent with its opinion.  *See id*. at 494.

### b. The Supreme Court's Opinion in *Miccosukee*

In 2004, after the Second Circuit's decision in *Catskill I*, the Supreme Court discussed

in its opinion in *Miccosukee* whether the CWA could be interpreted to exclude water transfers

from NPDES permitting requirements.  *See* 541 U.S. at 105-110.  The Government, as *amicus*

*curiae*, argued in defense of the position that a water pumping facility was not required to obtain

---

[4] Under *Chevron U.S.A. Inc. v. National Resources Defense Council*, 467 U.S. 837 (1985), deference is afforded to an administrative agency's interpretation of a statute the agency is to administer.  Applying *Chevron* deference is appropriate if "Congress delegated authority to the agency generally to make rules carrying the force of law, and . . . the agency interpretation claiming deference was promulgated in the exercise of that authority."  *Estate of Landers v. Leavitt*, 545 F.3d 98, 105 (2d Cir. 2008) (internal quotation marks omitted).  *Chevron* deference requires courts to examine first "'whether the intent of Congress is clear as to the precise question at issue.'"  *Levine v. Apker*, 455 F.3d 71, 80 (2d Cir. 2006) (quoting *Chevron*, 467 U.S. at 842) (internal quotation marks omitted).  "If traditional statutory interpretation demonstrates clear Congressional intent, 'that is the end of the matter,'" *id*. (quoting *Chevron*, 467 U.S. at 842), "because '[the courts] will not defer to an agency's interpretation that contravenes Congress'[s] unambiguously expressed intent,'" *id*. (quoting *N.Y. Pub. Interest Research Group, Inc. v. Johnson*, 427 F.3d 172, 179 (2d Cir. 2005)).  In contrast, if the court finds "the statute to be 'silent or ambiguous,'" the Court must defer to the implementing agency's construction of the statute "'as long as that interpretation is reasonable.'"  *Id*. (quoting *Bell v. Reno*, 218 F.3d 86, 90 (2d Cir. 2000)).

an NPDES permit.  *See id*. at 105-06.  Specifically, the Government argued that the CWA should

be interpreted in keeping with the unitary waters approach.  *See id*.  Under this approach, "all the

water bodies that fall within the [CWA's] definition of 'navigable waters' . . . should be viewed

unitarily for purposes of NPDES permitting requirements."  *Id*.  Because the CWA defines

"navigable waters" broadly as all "the waters of the United States, including the territorial seas,"

33 U.S.C. § 1362(7), interpreting the CWA in this manner "would lead to the conclusion that

[NPDES] permits are *not* required when water from one navigable water body is discharged,

unaltered, into another navigable water body . . . even if one water body were polluted and the

other pristine, and the two would not otherwise mix," *Miccosukee*, 541 U.S. at 106 (emphasis in

original).

Despite its discussion of the unitary waters approach to interpreting the CWA, the

Supreme Court expressly declined to decide whether this interpretation was permissible.  *See id*.

at 109 (declining to resolve whether the CWA subjects water transfers between "navigable

waters" of the United States to the NPDES permitting requirements because the parties had not

raised this argument before the lower courts or in their petition for certiorari and because no

reported case "examines the unitary waters argument in precisely the form that" it was presented

to the Court by the Government).  The Supreme Court noted, however, that EPA had never in

any document formally espoused the position that water transfers were not covered by the

NPDES permitting requirements.  *See id*. at 108.  The Court further pointed out that EPA may

have reached the opposite conclusion on at least one occasion and that the interpretation could

"conflict with current NPDES regulations."  *See id*.

10

The Supreme Court decided *Miccosukee* on the view that if two bodies of water were not "meaningfully distinct" from one another, an NPDES permit would not be required. *Miccosukee*, 541 U.S. at 112. Relying on the Second Circuit's analogy, the Supreme Court explained the concept of bodies of water that are not meaningfully distinct as follows: "'[i]f one takes a ladle of soup from a pot, lifts it above the pot, and pours it back into the pot, one has not "added" soup or anything else to the pot.'" *Id*. at 110 (quoting *Catskill I*, 273 F.3d at 492). Although the Court did not adopt a standard for determining whether bodies of water are meaningfully distinct, it held that the district court in *Miccosukee* had prematurely concluded that the two bodies of water at issue were meaningfully distinct, and it remanded the case for further fact finding. *Id*. at 111.

### c. Interpretive Memorandum and Proposed Water Transfers Rule

On August 5, 2005, in response to the Supreme Court's discussion in *Miccosukee*, EPA issued an Interpretive Memorandum regarding the applicability of the NPDES permitting requirements to water transfers (the "Interpretive Memorandum"). *See* EPA, Agency Interpretation on Applicability of Section 402 of the Clean Water Act to Water Transfers 1 (2005), *available at* http://www.epa.gov/ogc/documents/water_transfers.pdf. The Interpretive Memorandum purportedly "confirm[s] the [EPA's] longstanding practice" of treating water transfers as outside of the NPDES permitting requirements, and "conclude[s] that Congress intended for water transfers to be subject to oversight by water resource management agencies and State non-NPDES authorities, rather than the permitting program under . . . the CWA." *Id*. 3.

11

On June 7, 2006, EPA proposed to codify its general practice of not requiring NPDES permits for water transfers.  *See* Proposed Water Transfers Rule, 71 Fed. Reg. at 32,887.  The language of the Proposed Water Transfers Rule excluded water transfers from regulation under the NPDES permitting program.  *Id*.  It defined "water transfers" as "an activity that conveys waters of the United States to another water of the United States without subjecting the water to intervening industrial, municipal, or commercial use."  *Id*. at 32,889.  The Proposed Rule stated that EPA's reasoning for adopting the Rule was "bas[ed] on the legal analysis contained in the [I]nterpretive [M]emorandum."  *Id*.  For the next two years, EPA solicited comments from the public on the Proposed Rule.  *See id*. at 32,887.

### d. The Second Circuit's Second Decision in the *Catskill* Case

On June 13, 2006, six days after EPA published the Proposed Water Transfers Rule, the Second Circuit rendered a second decision in the *Catskill* case, this time deciding an appeal from the district court's award of injunctive relief to the plaintiffs and the imposition of civil penalties against the City of New York and its co-defendants.  *See Catskill Mountains Chapter of Trout Unltd., Inc. v. City of New York*, 451 F.3d 77, 78 (2d Cir. 2006) ("*Catskill II*").  In the appeal, the City of New York asked the Second Circuit to reconsider its holding in *Catskill I* "that the discharge of turbid water from the Shandaken Tunnel into the Esopus Creek requires a permit."  *Catskill II*, 451 F.3d at 80.  The Second Circuit reaffirmed its decision in *Catskill I* that the plain language of the CWA requires NPDES permits for water transfers, noting that neither the Supreme Court's decision in *Miccosukee* nor the Interpretative Memorandum compelled it to reach a different interpretation.  *See Catskill II*, 451 F.3d at 82-83.

12

The Second Circuit emphasized its view that *Miccosukee* supported its interpretation by, *inter alia*, pointing out language in the CWA that was inconsistent with the unitary theory of navigable waters.  *See id*. at 83 (citing *Miccosukee*, 541 U.S. at 105-09).  In the view of the Second Circuit, *Miccosukee* did not "constitute a change of controlling law" governing the interpretation of water transfers under the CWA, but rather, "*Miccosukee* did no more than note the existence of the [unitary waters] theory and raise possible arguments against it."  *Id*. (citing *Miccosukee*, 541 U.S. at 105-09).  Further, in reaffirming the holding of *Catskill I*, the Second Circuit refused to defer to EPA's Interpretive Memorandum, explicitly rejecting the legal arguments set forth in the Interpretive Memorandum as arguments that "simply over look [the CWA's] plain language."  *Id*. at 84.  Although *Catskill II* was published very shortly after EPA published the Proposed Water Transfers Rule, the Proposed Rule was not addressed in the Court's Opinion.

Ultimately, the Second Circuit affirmed the district court's award of injunctive relief for the plaintiffs and against the City of New York and its co-defendants, and it affirmed the imposition of a civil penalty (though it remanded this portion of the case for recalculation of that penalty).  *See id*. at 89.

### e. The District Court for the Southern District of Florida Considers *Friends of the Everglades v. South Florida Water Management District*

On December 11, 2006, several months after EPA published the Proposed Water Transfers Rule and after the Second Circuit's decision in *Catskill II*, the District Court for the Southern District of Florida issued an Order in *Friends of the Everglades, Inc. v. South Florida Water Management District*, No. 02-CV-80309, 2006 WL 3635465 (S.D. Fla. Dec. 11, 2006),

rejecting EPA's interpretation of the CWA as excluding certain water transfers from the NPDES permitting requirements.  *See id*. at *61.[5]

In particular, the plaintiffs in *Friends of the Everglades* had filed the action in 2002 under the citizen-suit provision of the CWA, 33 U.S.C. § 1365(a)(1), arguing that water transfers are covered by the NPDES permitting requirements.  The plaintiffs argued that under the CWA, an "'addition' of a pollutant takes place whenever a pollutant is added to a navigable water from anywhere outside of the receiving body of water, including from another water body."  *Friends of the Everglades*, 2006 WL 3635465, at *36 (emphasis omitted).  The defendants argued that (1) the statutory language of the CWA unambiguously excludes water transfers from its prohibition on discharging pollutants into navigable waters, and (2) even if the CWA was ambiguous, the court should defer to EPA's position as stated in the Proposed Water Transfers Rule.  *See id*. at *33-35.  The court rejected defendants' arguments, holding that the CWA unambiguously intends for water transfers to fall under the NPDES permitting system.  *See id*. at *42-43, 48.  The court further rejected defendants' request that it defer under *Chevron* to EPA's interpretation as stated in the Proposed Water Transfers Rule, noting that "[i]f Congress'[s]

---

[5] At issue in *Friends of the Everglades* is whether the South Florida Water Management District ("SFWMD") was obligated under the CWA to seek an NPDES permit before it could "discharge water containing pollutants into Lake Okeechobee by means of" three pump stations located at the Southern end of Lake Okeechobee.  *Friends of the Everglades*, 2006 WL 3635465, at *1-15.  These pump stations "are flow diversion facilities that change the movement, flow and circulation of the waters they control" from various canals to Lake Okeechobee.  *Id*. at *13.  Their purpose is to "pump excess drainage into the Lake" from the agricultural area of the Everglades.  *Id*.  These pump stations "do not introduce anything to the water as it moves through the stations," as all constituents in the waters transferred by the pump stations are already present in the water when they enter the pumps, but the pump stations do add water containing "color, nitrogen, phosphorus, total suspended solids, high biological demand, dissolved solids (including dissolved organics), low quantities of dissolved oxygen, and un-ionized ammonia" into Lake Okeechobee.  *Id*. at *13-14.

intent is clear and unambiguous, 'that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.'"  *Id*. at *47 (quoting *Chevron*, 467 U.S. at 842-43).

Additionally, the court determined that the bodies of water at issue were "meaningfully distinct," under the Supreme Court's holding in *Miccosukee*.  *See id*. at *49-51. Accordingly, the court entered judgment for the plaintiffs, declaring that in the absence of an NPDES permit, the water transfers at issue violated the CWA.  *See id*. at *61.  The Government, which had intervened in the action on behalf of EPA and the Army Corps of Engineers, appealed the decision to the Eleventh Circuit.  *See Friends of the Everglades v. S. Fla. Mgmt. Dist.*, Appeal No. 07-13829 (11th Cir. filed on Aug. 20, 2007).  That appeal is currently pending.

### f. Promulgation of the Water Transfers Rule

On June 13, 2008, EPA published the final Water Transfers Rule.  *See* NPDES Water Transfers Rule, 73 Fed. Reg. 33,697 (Envtl. Protection Agency, June 13, 2008) (codified at 40 C.F.R. § 122.3(i)(2008)).  The Water Transfers Rule states that discharges from a water transfer do not require NPDES permits.  *See* 40 C.F.R. § 122.3(i).  The Rule defines "water transfer" as:

> an activity that conveys or connects waters of the United States without subjecting the transferred water to intervening industrial, municipal, or commercial use.  This exclusion does not apply to pollutants introduced by the water transfer activity itself to the water being transferred.

*Id*.  In promulgating the Water Transfers Rule, EPA stated that it "is consistent with EPA's June 7, 2006[] proposed rule, which was based on [the] August 5, 2005, [I]nterpretive [M]emorandum."  73 Fed. Reg. at 33,697.

B. Procedural Background

Following EPA's issuance of the Water Transfers Rule, a host of interested persons, including all of the Plaintiffs in these consolidated cases, filed actions and petitions against EPA in district courts and circuit courts around the country.  *See, e.g.*, *Env't Am. v. EPA*, No. 08-1853 (1st Cir.); *Jones River Watershed Ass'n v. EPA*, No. 08-2322 (1st Cir.); *Catskill Mountain Chapter of Trout Unltd. v. EPA*, No. 08-3203 (2d Cir.) ("*Catskill III*"); *New York v. EPA*, No. 08-8444 (2d Cir.); *Pennsylvania v. EPA*, No. 08-4178 (3d Cir.); *Michigan Chapter of Trout Unltd., Inc. v. EPA*, No. 08-4366 (6th Cir.); *Sierra Club v. EPA*, No. 08-14921 (11th Cir.); *Miccosukee Tribe of Indians of Fla. v. EPA*, No. 08-13652 (11th Cir.); *Fla. Wildlife Fed'n v. EPA*, No. 08-13657 (11th Cir.); *Friends of the Everglades v. EPA*, No. 08-CV-21785 (S.D. Fla.); *Miccosukee Tribe of Indians of Fla. v. EPA*, 08-CV-021858 (S.D. Fla.); *Rivers Coalition Def. Fund, Inc. v. EPA*, 08-CV-80922 (S.D. Fla.).

Environmental Plaintiffs filed their Complaint in this Court on June 20, 2008, and State Plaintiffs filed their Complaint on October 2, 2008.  This Court consolidated these actions on October 8, 2008, and granted the motion of Defendant City to intervene on October 29, 2008. As Plaintiffs note in their Complaints, Plaintiffs filed petitions in the Circuit Courts of Appeal in addition to filing their claims with this Court, in recognition of the Parties' likely dispute regarding whether jurisdiction over their claims lies exclusively with the district or the circuit courts.  *See Catskill III*, No. 08-3203 (2d Cir. filed June 27, 2008); *Env't Am.*, No. 08-1853 (1st Cir. filed July 10, 2008); *New York v. EPA*, No. 08-8444 (2d Cir. filed Sept. 29, 2008).

On July 22, 2008, pursuant to 28 U.S.C. § 2112(a)(3), the United States Judicial Panel on Multidistrict Litigation ("MDL Panel") consolidated the five petitions for review of the Water

16

Transfers Rule then pending in the First, Second, and Eleventh Circuit Courts of Appeal and randomly assigned them to the Eleventh Circuit.  (Decl. of Daniel P. Filor Ex. ("EPA Defs.' Ex.") D.)  On September 10, 2008, the Eleventh Circuit granted in part the parties' joint motion to consolidate those petitions – docketed in the Eleventh Circuit as Nos. 08-13652, 08-13653, 08-13657, 08-14247, and 08-14471 (hereinafter "the Consolidated Petitions") – for review.  (EPA Defs.' Ex. E.)  In the same Order, the Eleventh Circuit *sua sponte* ordered the parties to show cause why the Consolidated Petitions should not be stayed pending disposition of EPA's appeal in *Friends of the Everglades*, No. 07-13829 (11th Cir. filed on Aug. 20, 2007) (hereinafter *Friends of the Everglades*).  On November 14, 2008, the Eleventh Circuit consolidated an additional petition for review, *Sierra Club v. EPA*, No. 08-14921 (11th Cir.), with the Consolidated Petitions.  The Eleventh Circuit then stayed all of the Consolidated Petitions pending disposition of the appeal in *Friends of the Everglades*.[6]  Oral argument in *Friends of the Everglades* was held on January 16, 2009, but the Eleventh Circuit has yet to decide that appeal.

## II. Discussion

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."  *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).  "[T]he decision whether to issue a stay is [therefore] 'firmly within a district court's discretion.'"  *LaSala v. Needham & Co., Inc.*, 399 F. Supp. 2d 421, 427 (S.D.N.Y. 2005) (quoting *Am. Shipping Line v.*

---

[6] In an Order dated November 6, 2008, the District Court for the Southern District of Florida stayed the proceedings filed in that court pending the disposition by the Eleventh Circuit of the appeal in *Friends of the Everglades*.  (EPA Defs.' Ex. Q, at 6.)  The court ordered the parties in those proceedings to submit monthly status reports following the oral argument held in *Friends of the Everglades* on January 16, 2009.

17

*Massan Shipping*, 885 F. Supp. 499, 502 (S.D.N.Y. 1995)).  In deciding whether to stay

proceedings, courts in the Second Circuit examine the following five factors:

> (1) the private interests of the plaintiffs in proceeding expeditiously
> with the civil litigation as balanced against the prejudice to the
> plaintiffs if delayed; (2) the private interests of and burden on the
> defendants; (3) the interests of the courts; (4) the interests of
> persons not parties to the civil litigation; and (5) the public interest.

*Finn v. Barney*, No. 08-CV-2975, 2008 WL 5215699, at *2 (S.D.N.Y. Dec. 8, 2008) (quoting

*Volmar Distrib. v. N.Y. Post Co.*, 152 F.R.D. 36, 39 (S.D.N.Y. 1993)); *see also LaSala*, 339 F.

Supp. 2d at 427; *Kappel v. Comfort*, 914 F. Supp. 1056, 1058 (S.D.N.Y. 1996).  "In balancing

these . . . factors on a case-by-case basis, 'the basic goal is to avoid prejudice.'"  *LaSala*, 339 F.

Supp. 2d at 427 (quoting *Kappel*, 914 F. Supp. at 1058).  Upon consideration of these five

factors, the Court finds that a stay of these actions is warranted.

   Staying these actions will best serve the interests of the courts by promoting judicial

efficiency and "minimiz[ing] the possibility of conflicts between different courts."  *N.Y. Power*

*Auth. v. United States*, 42 Fed. Cl. 795, 799 (Fed. Cir. 1999).  While the Eleventh Circuit's

decisions in *Friends of the Everglades* and in the Consolidated Petitions will not necessarily be

binding on this Court, "resolution of th[ose cases may] guide this Court in ruling on . . . the key

issues in this litigation."  *Goldstein v. Time Warner N.Y. City Cable Group*, 3 F. Supp. 2d 423,

439 (S.D.N.Y. 1998).  Indeed, under such circumstances, "[a] stay may . . . be appropriate

[while] awaiting 'the outcome of proceedings which bear upon the case, even if such proceedings

are not necessarily controlling of the action that is to be stayed.'"  *Finn*, 2008 WL 5215699, at *3

(quoting *LaSala*, 399 F. Supp. 2d at 427); *see also In re Literary Works in Elec. Databases*

*Copyright Litig.*, Nos. M-21-90, MDL 1379, 00-CV-6049, 00-CV-9411, 2001 WL 204212, at *2

(S.D.N.Y. Mar. 1, 2001) ("Where it is efficient for a trial court's docket and the fairest course for the parties, a stay may be proper even when the issues in the independent proceeding are not necessarily controlling of the action before the court.").

Although *Friends of the Everglades* does not involve a direct challenge to the final Water Transfers Rule (as that case was decided by the District Court before the Rule was officially promulgated), it involves a direct challenge to the Proposed Water Transfers Rule, which is virtually identical to the final Rule.  Particularly given that the legality of the Water Transfers Rule "has not [yet] been the subject of a ruling by a federal court," the Eleventh Circuit's review of the Proposed Water Transfers Rule will be instructive as to the underlying merits of the instant actions.  *Goldstein*, 3 F. Supp. 2d at 438-39 (staying district court proceedings pending D.C. Circuit's ruling on an issue substantially related to one before the district court).  Moreover, whereas the briefing in this case has yet to address the merits of Plaintiffs' challenge to the Water Transfers Rule, the validity of the Proposed Rule has been fully briefed in *Friends of the Everglades*.  The Court acknowledges the possibility that the Eleventh Circuit could avoid review of the Proposed Rule by deciding *Friends of the Everglades* on the grounds that the bodies of water at issue in that case are not "meaningfully distinct" under the guidance of *Miccosukee*, but that possibility should be considered in the context of the Eleventh Circuit's *sua sponte* stay of the Consolidated Petitions pending its decision in the *Friends of the Everglades* case.  Moreover, the district court's factual finding that there were two distinct bodies of water is not the focus of the appeal in *Friends of the Everglades*.  Therefore, given the advanced state of the *Friends of the Everglades* appeal (the case is fully briefed and oral argument was held on January 16, 2009), judicial resources are best conserved by waiting for the

19

Eleventh Circuit to issue its decision.  *See Goldstein*, 3 F. Supp. 2d at 438  (granting a stay

pending proceedings in the D.C. Circuit while "acknowledg[ing] that it is conceivable, at least

theoretically, for [the D.C. Circuit] to rule on the legality [of the challenged agency action] . . .

[on grounds other than those immediately before the district court].").

Likewise, judicial resources will be conserved by staying this action pending the

Eleventh Circuit's decision on the Consolidated Petitions.  The Consolidated Petitions raise

questions identical to those presented in these actions:  (1) they challenge the validity of the Water

Transfers Rule, and (2) they argue that the Circuit Courts of Appeal are without jurisdiction to

adjudicate such a challenge.  Thus, the Eleventh Circuit's decision on the Consolidated Petitions

will not only provide guidance as to the validity of the Water Transfers Rule, but it will also

advise this Court as to whether the Eleventh Circuit views itself as having exclusive jurisdiction

over the subject matter of the instant actions.  As Judge Castel explained in granting a stay in a

case in a similar procedural posture:

> Putting aside whether this Court would be bound by a ruling [of a
> Circuit Court outside of the Second Circuit in which petitions have
> been consolidated by the MDL Panel], there is much to be gained
> from knowing whether [that Circuit Court] considers itself to have
> exclusive jurisdiction over a review of the final agency action.  If
> this Court were to charge ahead with all proceedings necessary to
> bring the case to final judgment and it were later determined that
> this Court lacked jurisdiction, it may have served to delay a final
> adjudication in the proper court and would have wasted resources of
> the parties and the Court.

*Riverkeeper, Inc. v. U.S. Envtl. Prot. Agency*, No. 06-CV-12987, 2007 WL 4208757, at *2

(S.D.N.Y. Nov. 26, 2007).

By conserving judicial resources, a stay will serve not only the interest of the courts, but also the interests of the Parties, the nonparties, and the public in "an orderly and efficient use of judicial resources." *Id*. Granting a stay of the instant actions will potentially "avoid . . . inconsistent judgments that [c]ould result if both courts . . . proceeded simultaneously." *N.Y. Power Auth.*, 42 Fed. Cl. at 804-05; *see also id.* at 804 (noting that "[a] stay may be warranted when[, as here,] there is duplicative litigation due to jurisdictional conflicts"). Minimizing the risk of inconsistent judgments in the instant actions and the Consolidated Petitions is of particular importance, as different judgments would cause uncertainty about the validity of the Water Transfers Rule throughout the United States and could ultimately prolong litigation over the Rule. Relevant to this point is the fact that the Eleventh Circuit will be considering petitions originally filed in several Circuit Courts, including the Second Circuit. As all Plaintiffs to these actions and the EPA are parties before the Eleventh Circuit in the Consolidated Petitions, staying the instant actions will serve their interests by minimizing the amount of time and resources they will spend on duplicative litigation. In contrast, denying a stay would require the courts and the Parties to expend resources on simultaneous litigation of identical issues in two courts. Moreover, denying a stay may also prejudice the many nonparties that are before the Eleventh Circuit. Unlike these nonparties, the Plaintiffs in the instant actions will not be prejudiced by the Eleventh Circuit's disposition of the cases before it because all of the Plaintiffs in the instant actions are parties or *amici curiae* in *Friends of the Everglades* and the Consolidated Petitions.

Nor would Plaintiffs otherwise be prejudiced by a stay of these proceedings. Environmental Plaintiffs argue that they would be prejudiced by a stay pending resolution of the Consolidated Petitions because such a stay will be "lengthy in duration" if *Friends of the*

*Everglades* is decided on the grounds that the bodies of water at issue are not meaningfully

distinct.  (Envtl. Pls.' Mem. in Opp'n to EPA Defs.' Mot. to Stay or to Dismiss ("Envtl. Pls.'

Mem.") 7.)  State Plaintiffs similarly argue that any stay in this case will be too "open-ended"

since the length of the stay is dependent on the Eleventh Circuit's decision in *Friends of the*

*Everglades*.  (State Pls.' Mem. of Law in Opp'n to EPA Defs.' Mot. to Stay or Dismiss ("State

Pls.' Mem.") 16.)  Plaintiffs contend that by delaying resolution of the validity of the Water

Transfers Rule, which Plaintiffs claim pollutes the waters, a stay would harm their interests.[7]

(State Pls.' Mem. 17; Envtl. Pls.' Mem. 2-3.)  Yet, allowing these actions to proceed in this Court

will not expedite the final resolution of Plaintiffs' challenge to the validity of the Water Transfers

Rule.  If this Court and the Eleventh Circuit proceed simultaneously but issue contradictory

decisions – particularly as to jurisdiction – final resolution of the validity of the Water Transfers

Rule will be delayed until these issues are sorted out through the appellate process.  And, it hardly

amounts to speculation for this Court to believe that there will be an appeal of any dispositive

decision it issues, and that such an appeal obviously would go to the Second Circuit, from which

the MDL Panel has already transferred a petition to the Eleventh Circuit.  Thus, it is entirely

foreseeable that the Eleventh Circuit's handling of the Consolidated Petitions will be given

serious consideration by the Second Circuit.  Regardless, it is unarguable that a decision by this

---

[7] The Court notes that even in the absence of a final resolution of the validity of the Water
Transfers Rule, Environmental Plaintiffs' stated interest in the transfer of waters by Defendant
City from Esopus Creek are protected by the continued enforceability of the injunctive relief
issued by the Northern District of New York and affirmed by the Second Circuit in *Catskills II*,
which requires Defendant City to obtain an NPDES permit for its transfers of waters from
Esopus Creek.  *See Catskills II*, 451 F.3d at 89.  Indeed, the New York Supreme Court has
recently ruled that, notwithstanding the Water Transfers Rule, Defendant City is still obligated
under that injunction to obtain an NPDES permit.  (Envtl. Pls.' Mem. Ex. B, at 5-6.)

Court on the merits will not result in an expeditious resolution of the dispute over the validity of the Water Transfers Rule.  Therefore, even assuming *arguendo* that a delay in the final resolution of the validity of the challenged Rule harms Plaintiffs' interests, a stay will not, on its own, precipitate such a delay.

The Court further rejects Environmental Plaintiffs' argument that they will be "severely prejudiced by a stay in this case" because they are proceeding before the Eleventh Circuit only as *amici curiae* in *Friends of the Everglades*.  (Envtl. Pls.' Mem. 7.)  By accepting Environmental Plaintiffs as *amici curiae* in *Friends of the Everglades*, the Eleventh Circuit clearly recognized Environmental Plaintiffs' interest in the outcome of that case.  Moreover, as parties to the Consolidated Petitions, which raise issues identical to those raised in these cases, the Environmental Plaintiffs will have the same opportunity to be heard before the Eleventh Circuit that they have in this Court.

The Court likewise rejects State Plaintiffs' argument that they would be prejudiced by a stay because the Eleventh Circuit cannot "issue injunctive or related relief" in *Friends of the Everglades* to redress the State Plaintiffs' injuries.  (State Pls.' Mem. 18.)  Even taking State Plaintiffs' argument as true, State Plaintiffs seek identical relief in the Consolidated Petitions that they seek in the actions before this Court, and they presumably would move expeditiously to take advantage of a favorable decision in *Friends of the Everglades*.

Accordingly, because the interests of the Court, the Parties, nonparties, and the public outweigh any prejudice that would result from a stay of these proceedings, the Court will stay the

instant actions pending the Eleventh Circuit's resolution of *Friends of the Everglades* and the

Consolidated Petitions.[8]

### III. Conclusion

For the reasons discussed above, Defendants' motion to stay this action is granted.  The

Clerk of Court is respectfully directed to terminate the motion pending in Case No. 08-CV-5606

(Dkt. No. 28).

All proceedings in this matter are hereby stayed pending the Eleventh Circuit's

decisions in *Friends of the Everglades* and the Consolidated Petitions, and the Parties are directed

to file a status report with the Court within thirty days after the Eleventh Circuit files its decision

in *Friends of the Everglades* and every thirty days thereafter.

SO ORDERED.

Dated:        April 29, 2009
              White Plains, New York

                                                    KENNETH M. KARAS
                                                    UNITED STATES DISTRICT JUDGE

---

[8] Because the Court is staying this action, the Court offers no view on Defendants' motion to dismiss.  *See Int'l Sec. Exch., LLC v. Dow Jones & Co.*, No. 07-CV-3324, 2009 WL 46889 (2d Cir. Jan. 8, 2009) (Summ. Order) (affirming a stay order "without addressing whether there is federal subject matter jurisdiction over [the] action"); *cf. Friedman v. Revenue Mgmt. of N.Y.*, 38 F.3d 668, 671 (2d Cir. 1994) (declining to resolve question of whether district court possessed jurisdiction where the district court was within its discretion to abstain from hearing the case, even assuming that it had jurisdiction); *Med. Soc'y of State of N.Y. v. Conn. Gen. Corp.*, 187 F. Supp. 2d 89, 91 (S.D.N.Y. 2001) (noting that "it is . . . within [a] [c]ourt's power to decline to decide a motion which challenges [its] subject matter jurisdiction while awaiting" a decision by the MDL Panel on whether to transfer the case to another court).

24

*ECF Service List (By ECF):*

Daniel E. Estrin, Esq.
Karl S. Coplan, Esq.
Pace Environmental Litigation Clinic
78 North Broadway
White Plains, NY 10603
Email: destrin@law.pace.edu
Email: kcoplan@law.pace.edu

James G. Murphy, Esq.
National Wildlife Federation
58 State Street
Montpelier, VT 05602
Email: jmurphy@nwf.org

Joseph J. Mann, Esq.
National Environmental Law Center
369 Broadway Street, Suite 200
San Francisco, CA 94133
Email: jmann@nelconline.org

David H. Wrinn, Esq.
Connecticut Office of the Attorney General
55 Elm Street
Hartford, CT 06106

David L. Ormond, Jr., Esq.
Deputy Attorney General
Delaware Department of Justice
820 N. French Street, 6th Floor
Wilmington, DE 19801
Email: david.ormond@state.de.us

Eldon V.C. Greenberg, Esq.
Garvey Schubert Barer
1000 Potomac Street, N.W.
Suite 500
Washington, DC 20007
Email: egreenberg@gsblaw.com

Gerald T. Karr, Esq.
Illinois Office of Attorney General
69 West Washington Street
Suite 1800
Chicago, IL 60602

S. Peter Manning, Esq.
Michigan Department of Attorney General
525 Ottawa Street
Lansing, MI 48913
Email: manningp@michigan.gov

Carla Heyl, Esq.
Minnesota Office of the Attorney General
900 Bremer Tower
445 Minnesota Street
St. Paul, MN 55101

John K. McManus, Esq.
Shelly A. Woods, Esq.
Missouri Attorney General's Office
P.C. Box 899
Jefferson City, MO 65102
Email: jack.mcmanus@ago.mo.gov
Email: shelley.woods@ago.mo.gov

Kevin P. Donovan, Esq.
984 Morris Park Avenue
Bronx, NY 10462
Email: kevin.donovan@oag.state.ny.us

Ronald L. Lavinge, Esq.
Assistant Attorney General
Department of Ecology
2425 Bristol Court SW
2nd Floor
Olympia, WA 98502

Philip M. Bein, Esq.
New York State Office of the Attorney General
The Capitol
Albany, NY 12224
Email: philip.bein@oag.state.ny.us

Thomas A. Harnett, Esq.
Andrew Ketterer, Esq.
Attorney General of Maine
6 State House Station
Augusta, ME 04333-0006

Daniel P. Filor, Esq.
United States Attorney's Office
Southern District of New York
86 Chambers Street
New York, NY 10007
Email: daniel.filor@usdoj.gov

Bridget T. Eichinger, Esq.
NYC Law Department
Office of the Corporation Counsel
100 Church Street
New York , NY 10007
Email: beiching@law.nyc.gov