UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CATSKILL MOUNTAINS CHAPTER OF TROUT UNLIMITED, INC., THEODORE GORDON FLYFISHERS, INC., CATSKILL-DELAWARE NATURAL WATER ALLIANCE, INC., FEDERATED SPORTSMEN'S CLUBS OF ULSTER COUNTY, INC., RIVERKEEPER, INC., WATERKEEPER ALLIANCE, INC., TROUT UNLIMITED, INC., NATIONAL WILDLIFE FEDERATION, ENVIRONMENT AMERICA, ENVIRONMENT NEW HAMPSHIRE, ENVIRONMENT RHODE ISLAND, and ENVIRONMENT FLORIDA,<br><br>                    Plaintiffs,<br><br>                    and<br>MICCOSUKEE TRIBE OF INDIANS OF FLORIDA, a sovereign nation and Federally-recognized Indian Tribe,<br><br>                    Intervenor-Plaintiffs,<br><br>                    and<br>FRIENDS OF THE EVERGLADES, INC., FLORIDA WILDLIFE FEDERATION, INC., and SIERRA CLUB, INC.<br><br>                    Intervenor-Plaintiffs,<br>     v.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY and LISA JACKSON, in her official capacity as ADMINISTRATOR OF THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,<br><br>                    Defendants,<br><br>                    and<br><br>THE CITY OF NEW YORK,<br><br>                    Intervenor-Defendant. | Consolidated Cases:<br><br>Case No.<br>   08-CV-5606 (KMK) (GAY)<br><br>ECF Case<br><br><br><br><br><br>**MICCOSUKEE TRIBE OF INDIANS OF FLORIDA COMPLAINT FOR DECLATARORY RELIEF AND INJUNCTIVE RELEIF** |
| STATE OF NEW YORK, CONNECTICUT, DELAWARE, ILLINOIS, MAINE, MICHIGAN, MINNESOTA, MISSOURI, WASHINGTON, and the | Case No. |

1

| | |
|---|---|
| GOVERNMENT OF THE PROVINCE OF MANITOBA, CANADA, | 08-CV-8430 (KMK) (GAY) |
| Plaintiffs, | |
| and | |
| MICCOSUKEE TRIBE OF INDIANS OF FLORIDA, a sovereign nation and Federally-recognized Indian Tribe, | |
| Intervenor-Plaintiffs, | |
| and | |
| FRIENDS OF THE EVERGLADES, INC., FLORIDA WILDLIFE FEDERATION, INC., and SIERRA CLUB, INC. | |
| Intervenor-Plaintiffs, | |
| v. | |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY and LISA JACKSON, in her official capacity as ADMINISTRATOR OF THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, | |
| Defendants, | |
| and | |
| THE CITY OF NEW YORK, | |
| Intervenor-Defendant. | |

**INTERVENOR MICCOSUKEE TRIBE'S COMPLAINT FOR
DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF**

1. Plaintiff, Miccosukee Tribe of Indians of Florida ("Miccosukee Tribe"), brings this action for declaratory and injunctive relief. The action arises under, and alleges violations of the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 501-706, and is seeking review of a final action of Defendants Stephen L. Johnson, Administrator, and the United States Environmental Protection Agency ("EPA"). Plaintiff seeks a declaration from the Court that

2

EPA's actions are unlawful and an injunction directing EPA to repeal and rescind the rule promulgated by the Defendants under section 402 of the Clean Water Act ("CWA"), 33 U.S.C. § 1342, entitled the "National Pollutant Discharge Elimination System (NPDES) Water Trasnfers Rule."

2.      The Water Transfers Rule ("Rule") was published in the Federal Register at 73 Fed. Reg. 33697 (June 13, 2008) (codified at 40 C.F.R. § 122.3). A copy of the Rule is attached hereto as Exhibit A. The apparent intended effect of the Rule is to exempt from the point source permitting requirements of the CWA transfers of water from one meaningfully distinct navigable water to another.

## JURISDICTION

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), §2201 (declaratory judgment), §2202 (injunctive relief) and 5 U.S.C. § 706, which provides district court review of final agency actions for which there is no other adequate remedy in a court of law. There is present and actual controversy between the parties, and Plaintiff is challenging a final agency action pursuant to 5 U.S.C. §§ 551(13), 704. The Court may issue injunctive relief pursuant to 28 U.S.C. § 2202, 5 U.S.C. §§ 705-706.

## VENUE

4.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e) in that the Defendants are an agency of the United States and the employee of an agency of the United States that maintain offices in the Southern District of New York and at least one of the Plaintiffs resides in this district.

## PARTIES

5. Intervenor Plaintiff, the Miccosukee Tribe is a federally-recognized and federally-protected Indian Tribe, exercising powers of self-government under a Tribal constitution approved by the Secretary of the Interior, pursuant to the Indian Reorganization Act of 1934, 25 U.S.C. § 476. The Miccosukee Tribe's reside and work within the Florida Everglades on Indian lands in the Miccosukee Reserved Area ("MRA"), on the border of the Everglades National Park, and on perpetually-leased Indian lands and federal reservation lands, and depend upon the Everglades, Lake Okeechobee and other related areas for their culture and way of life. The Miccosukee Tribe receives discharges of waters the Rule purports to exempt and is damaged by those discharges.

6. Defendant EPA is an agency of the United States with primary authority for implementing the CWA. EPA developed and promulgated the Rule at issue in this Complaint.

7. Defendant Stephen L. Johnson, ("Defendant Johnson"), in his official capacity, is Administrator of the EPA and responsible for directing and administrating EPA, including responsibility for the Rule at issue in this Complaint. Johnson signed the Rule on June 9, 2008. Any reference to EPA for purposes of this Complaint shall be considered to include Defendants Johnson supervising in his official capacity unless otherwise specified.

8. For generations, the Miccosukee Tribe and its members have resided and worked within the Florida Everglades. The Miccosukee Tribe's land interests lie within the Florida Everglades, and its entire way of life is dependent upon a healthy Everglades. The term Everglades as used herein refers to the various areas presently identified as the Florida Water Conservation Areas ("WCAs"), Everglades National Park and Big Cypress National Preserve and other proximate waters, including Lake Okeechobee, historically considered the liquid heart of the Everglades.

9. The entire way of life of the Miccosukee Tribe and its members, including their religious, cultural, economic and historical identity, is based upon the Everglades and upon the condition of the Everglades, including but not limited to the quality and quantity of Everglades waters and Lake Okeechobee waters.

10. The Miccosukee Tribe's religious activities traditionally include the planting and harvesting of corn on tree islands in the Everglades. Subsistence activities include gathering of materials and plants, hunting, and fishing within the Everglades. Additionally, lake Okeechobee has played an integral part in Indian mythology and has been used by the native Indian tribes of Florida for centuries.

11. The Miccosukee Tribe's commercial activities include frogging, conducting air boat and other guided tours, and providing recreational and tourism facilities within the Everglades. The Miccosukee Tribe has a clear and substantial interest in all impacts on Lake Okeechobee and the Everglades and procedures relating to potential environmental impacts thereon.

12. Under the Everglades National Park Enabling Act, 16 U.S.C. § 410(b), Congress ratified the Miccosukee Tribe's aboriginal rights to reside in Everglades National Park. The Miccosukee Tribe's land interests include, but are not limited to: (i) Federal Indian Reservations (partly within and partly outside WCA-3A, but all within the Everglades); (ii) Indian Reservation rights to a portion within the Everglades National Park (designated by Congress as the Miccosukee Reserved Area); (iii) a perpetual lease for the use and occupancy of substantial portions of WCA-3A, which both the United States and Florida guarantee will be maintained in perpetuity in its natural state; (iv) aboriginal title of tribal members to portions of the Everglades; and (v) rights to traditional use and occupancy in Everglades National Park and Big Cypress

National Preserve. Historically, the Florida's native Indians have also had an interest in Lake Okeechobee as a source of food and water for the Everglades.

BACKGROUND

**The Clean Water Act**

13. The CWA requires NPDES point source permits for the "discharge of a pollutant" from a "point source" into "navigable waters." 33 U.S.C. §§ 1311(a), 1342(a), 1362(6)-(7), (12), (14).

14. A "discharge of a pollutant" occurs where there is "any addition of any pollutant to navigable waters from any point source. 33 U.S.C. § 1362(12)

15. A "point source" is expansively defined as "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, concentrated animal feeding operation, or vessel or other floating craft, from which pollutants are or may be discharged." 33 U.S.C. § 1362(14).

16. Navigable waters under the CWA are the waters of the United States, including the territorial seas. 33 U.S.C. § 1362(7).

17. The Term pollutant is defined as including but not limited to, "biological materials, … heat, … rock, sand, … industrial, municipal, and agricultural waste discharged into water." 33 U.S.C. § 1362(6).

18. Pollution is defined as "man made or man induced alteration of the chemical, physical, biological, and radiological integrity of the water." 33 U.S.C. § 1362(19).

**EPA Exempts Water Transfers from NPDES Permits**

19. The Rule purports to create a categorical exemption for discharges of polluted water from one navigable water into another navigable water (where the water is not subject to

an intervening industrial, municipal, or commercial use) from the CWA's section 402 NPDES permitting requirements.

20. This exemption occurs regardless of whether the transfer is made by discreet conveyance and regardless of whether it is discharging into navigable waters.

21. The exemption also occurs regardless of whether the water contains pollutants, regardless of the quality of the receiving waters and regardless of how polluted the discharged water may be.

22. EPA's creation of his categorical exemption is derived from a "holistic interpretation of the CWA from which EPA divines that Congress generally intended that water transfers be exempt from the permitting requirements of section 402. 73 Fed. Reg. 33697, 33702-33703.

23. In creating this categorical exemption, EPA did not review the actual and potential adverse impacts associated with transfers of water containing pollutants between meaningfully distinct navigable waters because its holistic interpretation leads it to the conclusion that those adverse impacts are solely he concern of the state and not EPA. 73 Fed. Reg. 33697, 33705.

24. Polluted water transfers between distinct water bodies that are the subject of the Rule often introduce pollutants to receiving water bodies that have significant impacts on the environment, including: the introduction of invasive species, chemical pollutants, and excess nutrients; increased sedimentation and alteration of basic abiotic parameters (e.g., warm water into cold water habitat, or salt water into fresh water); and the resulting detrimental effects on native species. Such polluted water transfers also often carry significant public health threats including: contamination of drinking water supplies by toxic by-products from the interaction of

chlorine used in treatment processes with total organic carbons, dissolved solids, nutrients, and algae; addition of harmful biota and cyanobacteria that produce toxins harmful to humans and wildlife; and addition of toxic biological and chemical effluents already present in the transferred water from earlier pollutant discharges.

25. Under the Rule, EPA has determined that persons discharging pollutants into a receiving water body via a water transfer activity are not required to obtain a NPDES permit.

26. The Rule exempts discharges of highly polluted water into unpolluted water from CWA permitting requirements regardless of any resulting human health or environmental impacts and regardless of any resulting violation of water quality standards in the receiving water body. 40 C.F.R. § 122.3(i). Remarkably, despite having received hundreds of comments and an enormous amount of data during the comment period that demonstrate the serious human health and environmental impacts of unregulated polluted water transfers, the EPA makes no effort in the Rule to even consider these undeniable adverse impacts. Under the Rule, salt water may be transferred into fresh water, sediment-laden water may be sent into clear drinking water reservoirs, warm waters may be pumped into cold water habitats (such as trout streams), chemical-laden waters may be dumped into waters employed in farm and ranch irrigation, and invasive species may be pumped into waters not yet infested. The EPA does not explain how the Rule, which leaves such polluted water transfers unregulated by NPDES permits, can possibly be consistent with the fundamental "objective" of the CWA to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). The EPA's failure to evaluate the actual and potential adverse impacts of the polluted water transfers exempted from NPDES permit requirements under the Rule was arbitrary, capricious, and an abuse of discretion.

27. The categorical exemption of polluted water transfers from NPDES permit requirements contained in the Rule is inconsistent with the courts' "plain language" constructions of the CWA's explicit requirements, *e.g., Catskill Mountains Chapter of Trout Unlimited, Inc. v. City of New York*, 273 F.3d 481 (2dCir. 2001) ("*Catskills I*") & *Catskill Mountains Chapter of Trout Unlimited, Inc. v. City of New York*, 451 F.3d 77, 83-85 (2d Cir. 2006) ("*Catskills II*"), *cert. denied*, 127 S. Ct. 1373(2007)., and is thus in excess of EPA's statutory authority under the statute. The EPA apparently believes that the Final Rule will succeed where the EPA's rationale underlying the Final Rule has previously been rejected because reviewing courts will now be required to employ "*Chevron* deference" in their analysis. *See* Final Rule, 73 Fed. Reg. at 33700, n.4. However, defendants' attempt to overrule the Second Circuit's (and other courts') "plain meaning" judicial constructions via their conflicting interpretation in the Rule is foreclosed by *National Cable & Telecommunications Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 982 (2005), which holds that a "court's prior judicial construction of a statute trumps an agency construction . . . if the prior court decision holds that its construction follows from the unambiguous terms of the statute."

28. In addition, because the Final Rule will surely facilitate the introduction and spread of invasive species, the EPA has also violated Presidential Executive Order 13112, entitled "Invasive Species." *See* 64 Fed. Reg. 6183 (February 9, 1999). Executive Order 13112 was issued "to prevent the introduction of invasive species and provide for their control and to minimize the economic, ecological, and human health impacts that invasive species cause." *Id*. 6183. In order to effectuate this purpose, the Order requires that all Federal agencies whose activities may affect the introduction or spread of invasive species must, among other things, prevent the introduction of invasive species and "not authorize, fund, or carry out actions that it

believes are likely to cause or promote the introduction or spread of invasive species." *Id.* at 6184. There is an exception to this directive if the agency determines, and makes public such determination, that the benefits of the actions in question clearly outweigh any potential harm that may be caused by invasive species. *See id*. The agency is also required to take all feasible and prudent measures to minimize the risk of harm. *See id*. The EPA did not mention Executive Order 13112 in the proposed rule and, remarkably, EPA still does not mention it in the Final Rule despite having received extensive comments with supporting data about how the rule will foster the introduction and spread of invasive species.

**Procedural History**

29. On August 5, 2005, the EPA issued an interpretive memorandum entitled "Agency Interpretation on Application of Section 402 of the Clean Water Act to Water Transfers."

30. On June 7, 2006, the EPA published for comment the "National Pollutant Discharge Elimination System (NPDES) Water Transfers Proposed Rule." 71 Fed. Reg. 32,887 (June 7, 2006).

31. On June 9, 2008, Administrator Johnson took final agency action when he signed the Final Rule.

32. On June 4, 2009, the Eleventh Circuit Court of Appeals decided *Friends of the Everglades v. South Florida Water Management District*, 570 F.3d 1210 (11th Cir. 2009), in which it found, inconsistently with the Second Circuit's finding, that the CWA was ambiguous and that the Rule was a reasonable interpretation by EPA of the CWA.

## **CLAIMS FOR RELIEF**

### **CLAIM I**

**The Rule Is Unlawful Because EPA Lacks The Authority To Adopt A Rule That Contravenes The Plain Meaning Of The CWA**

33. The Miccosukee Tribe re-alleges and re-avers the allegations in paragraphs 1 through 32.

34. The Rule is inconsistent with, and in excess of the authority granted by Congress to the EPA in the CWA.

35. The Rule adoption by EPA is arbitrary, capricious, and without discretion; promulgated inconsistently with statutory limitations; in excess of statutory authority; and not in accordance with law because

    a. The plain text of the CWA requires NPDES permits for all discharges that result in the addition of pollutants into the waters of the United States, including discharges of polluted water from one meaningfully distinct navigable water to another;

    b. EPA lacks the statutory authority to create a categorical exemption to point source permitting requirements beyond those exemptions specifically enumerated by Congress;

    c. EPA lacks the statutory authority to exempt transfers of polluted water from NPDES permitting requirements because the word "addition" has a plain meaning;

    d. EPA lacks the statutory authority to create a categorical exemption to point source permitting requirements on "policy" grounds where that exemption is foreclosed by the plain meaning of the statute;

e.  EPA lacks the statutory authority to create a categorical exemption based upon what it refers to as "its longstanding interpretation," where that interpretation is contradicted by the unambiguous text of the statute;

f.  EPA lacks the statutory authority to create a categorical exemption for transfers of polluted water where prior judicial precedents from this Circuit have held that creation of the exemption violates the unambiguous and plain meaning and fundamental objectives of the CWA; and/or

g.  EPA lacks the statutory authority to abdicate its responsibility over the addition of pollutants into navigable waters from point sources due to concerns with state water rights and state water usages because the plain meaning and fundamental objectives of the CWA require EPA to exercise its pollution control responsibilities over navigable waters even if states' rights are incidentally affected.

36. EPA's unlawful promulgation of the Rule is subject to review under Section 706(2) of the Administrative Procedure Act, 5 U.S.C. § 706(2).

## CLAIM II

**The Rule Is Unlawful Because Prior Judicial Precedent From This Circuit Establishes That The CWA Is Unambiguous On His Face**

37.  The Miccosukee Tribe re-alleges and re-avers the allegations in paragraphs 1through 36.

38.  The Rule states that section 402 of the CWA is ambiguous regarding whether water transfers require NPDES permits.

39.  In the Rule EPA concluded that, based on its holistic interpretation, water transfers do not require NPDES permits.

40.  EPA claims in the Rule that its interpretation of the CWA is entitled to deference.

41.     The Rule is based on a construction by the EPA of the CWA that conflicts with a binding prior judicial construction that the statute unambiguously requires permits for water transfers by the Second Circuit in Catskills Chapter of Trout Unlimited v. City of New York, 451 F.3d 77 (2d Cir. 2006), cert denied, 127 S. Ct. 1373 (2007); *contra Friends of the Everglades v. South Florida Water Management District*, 570 F.3d 1210 (11th Cir 2009).

42.     The Rule is unlawful under 5 U.S.C. § 706(2) because it is based upon a holistic interpretation of the CWA that is foreclosed by binding precedent and as result must be vacated.

## CLAIM III

**The Rule is Unlawful Because EPA Failed to Analyze Actual and Potential Adverse Impacts Resulting from Transfers of Polluted Waters from One meaningfully Distinct Navigable Water to Another**

43.     The Miccosukee Tribe re-alleges and re-avers the allegations in paragraphs 1 through 42.

44.     EPA arbitrarily, capriciously, and without discretion or observance of procedure required by law failed to analyze the actual and potential adverse impacts resulting from transfers of polluted water from one meaningfully distinct navigable water into another in violation of 5 U.S.C. § 706(2).

45.     For example, it categorically exempts from NPDES permitting requirements the following transfers of water:

    a.  Transfers of salt water into fresh water;

    b.  Transfers of invasive species into non-infested waters;

    c.  Transfers of toxic biological pollutants such as toxic blue-green algae into uncontaminated waters;

    d.  Transfers of water polluted with nutrients (such as nitrogen. Phosphorous, and ammonia), industrial chemicals, herbicides, pesticides, dissolved organic carbon, total

13

dissolved solids, sulfates, and sediment into water bodies that serve as drinking water sources and the concomitant increases in cost in treating that water;

e. Transfers of warm waters into cold water habitats;

f. Transfers of highly polluted waters into ecological pristine water bodies; and/or

g. Transfers of polluted water into areas that provide critical habitat for endangered species.

## PRAYER FOR RELIEF

WHEREFORE, the Miccosukee Tribe respectfully requests this Honorable Court enter judgment in the Miccosukee Tribe's favor, and:

1. Vacate the Water Transfer Exemption Rule, declaring it unlawful and issuing an injunction requiring Defendants to repeal and rescind it; and

2. Award the Miccosukee Tribe its reasonable fees, costs, expenses and disbursements, including attorneys' fees, pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412 and any other applicable provision; and

3. Grant such other relief as the Court deems just and proper.

Respectfully submitted this 22st day of March, 2013.

                s/ Bernardo Roman III
                Bernardo Roman III
                Tribal Attorney
                Miccosukee Tribe of Indians of Florida
                P.O. Box 440021, Tamiami Station
                Miami, Florida 33144
                Telephone: (305) 894-5214
                Facsimile: (305) 894-5212
                E-mail: bromanlaw@bellsoutn.net

                Yinet Pino, Esq.
                Law Offices of Bernardo Roman III, P.A.
                1250 SW 27th Avenue, Suite 505
                Miami, Florida 33135

Telephone: (305) 643-7993
Facsimile: (305) 643-7995
E-mail: Yinet@bromanlaw.com

Case 7:08-cv-05606-KMK   Document 120-1   Filed 03/22/13   Page 15 of 16

# EXHIBIT A